IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION,<br>and<br><br>INTELSAT, LLC<br><br>    Plaintiffs,<br><br>v.<br><br>SATCOM SYSTEMS, INC.<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CA No. 07-119<br>)<br>)<br>)<br>)<br>) |

## **FIRST AMENDED COMPLAINT**

Plaintiffs Intelsat USA Sales Corporation and Intelsat LLC, by counsel, file this First Amended Complaint against defendant Satcom Systems, Inc. ("Satcom"), and plead as follows:

1. Plaintiff Intelsat USA Sales Corporation ("Intelsat USA") is a Delaware corporation with its principal place of business in the District of Columbia.

2. Plaintiff Intelsat LLC is a Delaware limited liability company with its principal place of business in Hamilton, Bermuda.

3. Defendant Satcom is a Nevada corporation with its principal place of business in the State of California.

4. This Court has subject matter jurisdiction over this matter as this action arises under federal law, 47 U.S.C. 605 (e). Moreover, pursuant to 28 U.S.C. §1332, there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5. Jurisdiction and venue in this Court is proper, as defendant has breached its contract with plaintiff Intelsat USA in the District of Columbia, and defendant has also irrevocably consented to the jurisdiction of this court. Exhibit 1, ¶ 13.

6. On April 25, 2005, Intelsat USA and Satcom entered into a Nonexclusive Service Agreement ("NSA"). A copy of the NSA is attached hereto as Exhibit 1. Under the terms of the NSA, Intelsat USA agreed to provide Satcom with certain telecommunications services on communications satellites owned by Intelsat LLC, and Satcom agreed to pay Intelsat USA's charges and fees for such services as described in the Service Contracts made part of the NSA, and agreed to pay all invoices issued by Intelsat USA for such services.

7. Plaintiff Intelsat USA provided telecommunications services to defendant pursuant to the NSA and the Service Contracts, and has performed all its obligations under the NSA and the Service Contracts.

8. Pursuant to the NSA and the Service Contracts, as of January 10. 2007, plaintiff Intelsat USA has issued invoices totaling $8,765,611.47 to defendant, which invoices defendant has failed to pay. Defendant has never disputed any invoice issued by plaintiff Intelsat USA. Under the terms of the NSA, such invoices are final.

9. On October 16, 2006, pursuant to the NSA, plaintiff Intelsat USA terminated the NSA and all Service Contracts between plaintiff and defendant for non-payment. Under the terms of the NSA, all amounts due from defendant to plaintiff Intelsat USA under the remaining term of the Service Contract became immediately due and payable at that time.

10. Pursuant to the NSA and the Service Contract, as of January 10. 2007, defendant owes plaintiff Intelsat USA the sum of $8,765,611.47, together with interest due thereafter at the rate of 16 percent, and the costs of collection.

11. Despite repeated demand for payment, defendant has failed to make payments as due.

12. In spite of the termination of the NSA and Service Contracts, defendant continues to use plaintiff Intelsat LLC's satellite and communication services without paying for them, and continues to resell such satellite and communication services to Satcom's customers for the benefit of Satcom.  Defendant continues to pirate Intelsat LLC's services by sending telecommunication signals to and receiving telecommunication signals from Intelsat LLC's satellite transponders.  Such actions constitute theft of services, trespass to Intelsat LLC's telecommunication equipment, and a violation of 47 U.S.C. § 605.

13. Plaintiffs are unable to offer certain satellite capacity to new or existing customers, because defendant has used and is continuing to use such capacity without authority.  Plaintiffs have no adequate remedy at law to remedy defendant's piracy of Intelsat LLC's satellite, equipment, and services.  Moreover, defendant's actions damage plaintiffs' reputation and goodwill, impair their ability to attract other customers and finance future services, and thus inhibit their ability to enhance its future growth and profitability.

## COUNT ONE

(Breach of Contract)

14. Plaintiffs incorporate the allegations of paragraphs 1 through 13 above.

15. Under the terms of the NSA, defendant agreed to pay Intelsat USA's charges and invoices.

16. Defendant has breached the terms of the NSA and the Service Contracts by failing to pay for the services rendered by plaintiff Intelsat USA under those agreements and by failing to pay plaintiff's invoices.

17. Plaintiff has been damaged as a result of defendant's breaches.

WHEREFORE plaintiff Intelsat USA Sales Corporation demands judgment in its favor against defendant Satcom Systems, Inc. in the amount of $8,765,611.47, together with interest, its costs herein, and such other relief as to the Court seems proper.

## COUNT TWO

(Quantum Meruit/Unjust Enrichment)

18. Plaintiffs incorporate the allegations of paragraphs 1 through 17 above.

19. Plaintiffs have conferred benefits on defendant by providing telecommunications services for defendant's use.

20. Defendant was aware of the benefits conferred by plaintiffs, and has accepted those benefits.

21. It would be inequitable for defendant to retain such benefits without compensation to plaintiffs.

22. Plaintiffs have been damaged as a result of defendant's failure to pay for the benefits conferred on defendant by plaintiffs.

WHEREFORE plaintiffs Intelsat USA Sales Corporation and Intelsat LLC demand judgment in their favor against defendant Satcom Systems, Inc. in an amount to be proven at trial, together with interest, their costs herein, and such other relief as to the Court seems proper.

### COUNT THREE
(Satellite Piracy in Violation of 47 U.S.C. §605)

23. Plaintiffs incorporate the allegations of paragraphs 1 through 22 above.

24. Defendant continues to use Intelsat LLC's telecommunications satellite and services without authority. Defendant, without being entitled to, continues to receive or assist in receiving interstate and foreign communications by radio and use such communications for its own benefit and for the benefit of others also not entitled to receive such communications.

25. Defendant's acts constitute violations of the Federal Communications Act, 47 U.S.C. § 605(a) ("the Act").

26. Plaintiffs are persons aggrieved by defendant's violations of 47 U.S.C. § 605(a).

27. Defendant's actions were done willfully and for the direct or indirect commercial advantage and private financial gain of defendant.

WHEREFORE, plaintiffs pray this Court enter an order:

   a) granting temporary and permanent injunctions against Satcom, restraining further violations of 47 U.S.C. §605;

   b) awarding to plaintiffs either their actual damages suffered as a result of Satcom's violations and any profits of Satcom attributable to the violation; or statutory damages of $110,000 for each violation of the Act, as plaintiffs may elect;

   c) awarding to plaintiffs their attorneys' fees and costs herein; and

   d) such other relief as to the Court seems proper.

## COUNT FOUR
(Trespass to Chattels)

28. Plaintiffs incorporate the allegations of paragraphs 1 through 27 above.

29. Defendant has interfered and continues to interfere with plaintiff Intelsat LLC's satellite and transponders.

30. Defendant's theft of plaintiffs' services and unauthorized access of plaintiff Intelsat LLC's satellite and transponders constitute a continuing trespass to plaintiff Intelsat LLC's chattels and property.

31. Plaintiff Intelsat LLC has been damaged as a result of defendant's interference with plaintiff's satellite and transponders.

WHEREFORE, plaintiff Intelsat LLC prays this Court enter an order:

   e) granting temporary and permanent injunctions against Satcom restraining further trespasses to its satellite, transponders, and equipment;

    f) awarding to plaintiff its actual damages suffered as a result of Satcom's trespasses, in an amount to be proven at trial;

    g) awarding to plaintiffs its costs herein; and

    h) such other relief as to the Court seems proper.

### COUNT FIVE
(Conversion)

32. Plaintiffs incorporate the allegations of paragraphs 1 through 31 above.

33. Defendant unlawfully exercised and continues to unlawfully exercise dominion and control over plaintiff Intelsat LLC's satellite and telecommunications equipment.

34. Plaintiff Intelsat LLC has been damaged as a result of defendant's conversion of its property.

WHEREFORE plaintiff Intelsat LLC demands judgment in its favor against defendant Satcom Systems, Inc. in an amount to be proven at trial, together with interest, its costs herein, and such other relief as to the Court seems proper.

INTELSAT USA SALES CORPORATION
INTELSAT LLC
By Counsel


_____/s/_____
David I. Bledsoe
Bar No 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

Contract Number: 04165-000
Customer Number: 26928

NON-EXCLUSIVE SERVICE AGREEMENT ("Agreement") DATED THIS _____ DAY OF _____ 2005 (the "Effective Date") for the supply of Services BETWEEN

INTELSAT USA SALES CORP. ("Intelsat"), a company incorporated under the laws of the State of Delaware with offices at 3400 International Drive, N.W., Washington, D.C. 20008; AND SATCOM SYSTEMS, INC., a company incorporated under the laws of the State of Nevada with offices at 2333 N. Valley Street, Burbank, CA 91505-1114 (the "Customer"). Intelsat and the Customer shall each be referred to herein individually as a "Party" and collectively as the "Parties".

THE PARTIES HEREBY AGREE AS FOLLOWS:

1. **TERM**

This Agreement shall start on the Effective Date and last for five years and continue thereafter until terminated by either Party giving the other Party 90 days written notice.

2. **THE SERVICES**

2.1 The Customer may purchase services from Intelsat during the Term. Intelsat may, at its sole discretion and without giving any reason, refuse to accept any such request for services. If Intelsat agrees, the Parties shall enter into a binding Service Contract under this Agreement for the supply of the service ("Service"), which shall specify the terms for the provision of the Service and take precedence over this Agreement. The terms of this Agreement shall apply to any Service Contracts for the duration of such Service Contracts (even if such exceeds the Term).

2.2 The services Intelsat offers are at https://doc.intelsat.com/service_contracts (Service Descriptions and Addenda). Intelsat may from time to time amend or withdraw any Service Descriptions, always provided that any such amendment or withdrawal shall not apply to existing Services.

2.3 All services are offered on a non-exclusive basis for the Customer's own use, or for use as a component of another product for its own use, or sale to its own customers. The Customer may not otherwise distribute or resell any Services without the express written agreement of Intelsat.

2.4 The Customer shall be responsible, at its own expense, for interconnection with the Services at the Service Demarcation Points (SDP) specified in a Service Contract. Intelsat shall have no liability for Services beyond these points.

2.5 The Customer may renew or extend a Service of 6 months or longer by giving Intelsat notice that it wishes to do so at least 90 days before the Service end date set out in the Service Contract ("SED"), subject to reaching agreement on price and terms within 30 days. Intelsat will otherwise be free to remarket the Satellite capacity used for that Service.

2.6 If the Customer continues to use a Service past its SED, Intelsat may, at its sole option, cease to supply the Service or continue to supply it at either the rate charged in the Service Contract or the then-current market rate.

3. **CHARGES AND PAYMENT**

3.1 "Charges" means all charges specified in a Service Contract or otherwise due to Intelsat. Recurring Charges shall be paid monthly in arrears. The Customer shall pay all Charges in US$ within 45 days of the date of the invoice. Any payment not received by its due date will be subject to interest at a rate of 18% per year. All payments shall be made in full free and clear of any set-off, restriction, condition or deduction. Payments shall only be deemed received when they reach the following account: Intelsat USA Sales Corp., Citibank FSB, Washington, D.C., ABA # 254070116, Account number 15096572.

3.2 Unless the Customer notifies Intelsat of any dispute within 20 days of the date of an invoice, the invoice shall be considered final and undisputed. The Customer shall pay all undisputed amount by the relevant payment-due date.

3.3 Intelsat may require the Customer to provide it with financial security ("Collateral") for any Service at any time during its term as security for payment of Charges and other liabilities. The Customer shall still be responsible for the timely payment of Charges. Intelsat shall be entitled to call upon any Collateral for any late payment or other liabilities that the Customer may incur, and the Customer shall be obliged to replenish the Collateral. Failure to do so will be a material breach of this Agreement. Intelsat will return any remaining Collateral to the Customer after the termination of the Service Contract once all liabilities have been settled.

3.4 The Customer shall pay any and all taxes and imposts of any nature whatsoever levied on any Service, save for taxes imposed upon or measured by Intelsat's income in the USA. If any taxes are required to be withheld from amounts payable to Intelsat, or to the extent Intelsat is required to pay or actually pays any taxes in the first instance, any amounts payable to Intelsat by the Customer shall be increased so that Intelsat receives the amount it would have received had no taxes been imposed.

4. **SERVICE LEVELS**

4.1 Intelsat will use reasonable efforts to provide each Service as set out in its Service Contract.

4.2 If a "Service Interruption" (that is a Customer-reported outage to a Service which lasts for more than 60 minutes from the time it is reported to Intelsat) occurs, following verification by Intelsat, Intelsat shall give the Customer a credit against future Charges for that Service calculated as a pro-rata proportion of the recurring monthly Charge for that Service (an "Interruption Credit").

4.3 Intelsat shall not be liable for any failure to supply any Service and in no event shall Interruption Credits be given in respect of any Service Interruption that is caused by the Customer or its default or by events beyond Intelsat's reasonable control.

5. **SUSPENSION AND TERMINATION FOR DEFAULT**

5.1 Intelsat may, at its option, terminate this Agreement (including all Service Contracts) or a Service Contract by notice if the Customer (i) fails to make any payment due to Intelsat within 15 days of receiving notice that such payment is late; or (ii) breaches any warranty; or (iii) is otherwise in material breach of this Agreement and does not cure that breach within 30 days of receiving notice from Intelsat.

5.2 Provided that the Customer is not in material breach of any of its obligations under this Agreement, the Customer may terminate a Service Contract by giving written notice if Intelsat fails to meet the relevant Service minimum performance criteria in the Intelsat Technical Guidelines and Operating Procedures due solely to Intelsat's negligence for a period greater than 15 consecutive calendar days following Intelsat's receipt of notice of such failure.

5.3 Either Party may terminate this Agreement if the other Party files a petition in bankruptcy or is adjudicated bankrupt or insolvent, or files or has filed against it any petition or answer seeking any reorganisation, composition, liquidation or similar relief for itself under

Contract Number: 04185-000
Customer Number: 26925

any applicable statute, law or regulation or makes any general assignment for the benefit of its creditors, or admits in writing its inability to pay its debts generally as they become due.

5.4 Intelsat may terminate this Agreement if there is a change in the ownership or corporate holding of the Customer that in Intelsat's reasonable opinion will affect its position, rights or interests.

5.5 Upon termination or expiration of this Agreement (or a Service Contract) for whatever reason, the Customer shall cease using the Services and the Satellite capacity. All outstanding indebtedness of the Customer (under the Agreement or the Service Contract as appropriate) to Intelsat shall become immediately due and payable. Further, for each Service Contract that has been terminated by Intelsat, all amounts due to be paid by the Customer to the end of that Service Contract shall immediately become due and payable. The Parties agree this is a proper assessment of the loss of bargain and damages Intelsat will incur, and is not a penalty.

5.6 Intelsat may suspend Services in whole or in part (i) if necessary to comply with any applicable laws, regulations or government orders, or (ii) if the Customer's signals are being blocked or jammed by a third party; (iii) if an Earth Station is not in compliance with the Technical Guidelines and Operating Procedures; or (iv) in circumstances where Intelsat is entitled to terminate this Agreement for the Customer's default;

5.7 Intelsat may also suspend Services by giving the Customer reasonable written notice in order to perform testing, maintenance or adjustment works. Intelsat shall seek to coordinate the timing of such action with the Customer in order to minimise any interruption to Services, and shall use reasonable efforts to minimise any such suspensions. In "Urgent Operational Cases", (that is situations that in the opinion of Intelsat on the information then available have or are likely to cause: (i) damage to the Satellites or related infrastructure of Intelsat or a third party or (ii) major and sustained interference with other services) Intelsat may suspend Services without notice.

6. LIMITATION OF LIABILITY

6.1 INTELSAT WARRANTS IT WILL PROVIDE THE SERVICES WITH APPROPRIATE SKILL. ANY AND ALL OTHER EXPRESS OR IMPLIED WARRANTIES ARE EXPRESSLY EXCLUDED AND DISCLAIMED BY INTELSAT.

6.2 WITH THE EXCEPTION OF CLAIMS FOR DEATH OR PERSONAL INJURY DUE TO INTELSAT'S NEGLIGENCE, FOR WHICH THERE IS NO LIMITATION IMPOSED, IT IS EXPRESSLY AGREED THAT INTELSAT'S SOLE OBLIGATION AND THE CUSTOMER'S EXCLUSIVE REMEDY FOR ANY DIRECT LOSS WHATSOEVER ARISING OUT OF OR RELATING TO THIS AGREEMENT IS INTERRUPTION CREDITS AND THE CUSTOMER AGREES THAT THESE ARE A GENUINE PRE-ASSESSMENT OF LOSS AND DAMAGE.

6.3 IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHATSOEVER ARISING OUT OF OR UNDER THIS AGREEMENT WHETHER UNDER CONTRACT, WARRANTY, TORT OR OTHERWISE, INCLUDING LOSS OF REVENUE OR PROFITS, REGARDLESS OF THE FORESEEABILITY OF SUCH DAMAGES.

6.4 THE CUSTOMER SHALL REQUIRE ALL OF ITS CUSTOMERS TO ABIDE BY TERMS AND CONDITIONS SIMILAR TO THOSE IN THIS AGREEMENT, INCLUDING DISCLAIMERS OF LIABILITY IN FAVOUR OF INTELSAT AND ITS AFFILIATES SUBSTANTIALLY SIMILAR TO (BUT IN NO CASE LESS BROAD THAN) THOSE SET FORTH IN THIS SECTION.

7. INDEMNIFICATION

7.1 The Customer shall be liable for and shall indemnify and hold harmless Intelsat (including any affiliate or director, officer, employee or agent of Intelsat or its affiliates) harmless from and against any direct or indirect loss, damage, liability or expense arising from any claim by a third party, in connection with the provision of Services and arising out of or in connection with (i) the fault or negligence or breach of this Agreement by the Customer; or (ii) the Customer's breach of any national laws, rules and regulations applicable to it; or (iii) the Customer's or any third party end-user's use of the Services regardless of cause by the Customer, its affiliates or customers including any claims relating to the information or content of programming or other material displayed or transmitted.

7.2 The Customer also shall be liable for and shall indemnify and hold harmless Intelsat from and against any loss or damage to Intelsat's Satellites or related Intelsat provided infrastructure and facilities that is caused by any act or omission of the Customer.

8. FORCE MAJEURE

8.1 Neither Party shall be liable for any failure to perform under this Agreement due to any unforeseeable act, event or cause beyond its reasonable control ("Force Majeure Event") during the duration of the Force Majeure Event. Upon removal or cessation of the Force Majeure Event, all obligations under this Agreement shall resume.

8.2 Except in cases where a Force Majeure Event has been invoked by the Customer, the Customer shall remain liable for all of its payment obligations hereunder regardless of the occurrence of a Force Majeure Event.

8.3 If a Force Majeure Event continues for more than thirty (30) days, the Parties shall meet to negotiate in good faith how to proceed. In no event shall either Party take any unilateral action under this Article.

9. WARRANTIES

9.1 The Customer warrants that (i) it has obtained all applicable clearances and licences, consents and approvals necessary to enable it to operate, receive and use the Services and to perform its other obligations under this Agreement; (ii) it is in compliance with, and performance of its obligations hereunder will not violate or conflict with, any applicable law or regulation of any jurisdiction to which it is subject; (iii) it will only use and will procure that its customers only use the Services and/or display or transmit any information or content using or in connection with the Services in compliance at all times with all applicable laws and regulations; and (iv) it will follow established practices and procedures for frequency co-ordination and will not use the Services in a manner that could reasonably be expected to interfere with or cause physical harm to the Satellites or other services that Intelsat offers. These Warranties shall apply throughout the Term and until the SED of the last remaining Service Contract.

9.2 Each Party represents and warrants to the other Party that as of the date of this Agreement (i) it has the right, power and authority to enter into and fully perform its obligations hereunder (ii) the execution, delivery and performance of this Agreement have been duly authorised by all necessary corporate action; and (iii) this Agreement constitutes legal, valid and binding obligations on that Party.

10. CONFIDENTIALITY

10.1 Intelsat and the Customer agree that it may be necessary to the performance of this Agreement for a Party to disclose Confidential Information (that is information of a confidential or proprietary nature relating to this Agreement or a Party, its affiliates or other representatives that is reduced to writing and marked "Confidential" or similarly, not including information (i) developed independently or lawfully received from a third party without an obligation of confidentiality, or (ii) that reaches the public domain other than by a breach of this Agreement) to the other Party. The receiving Party shall use the same standard of care to maintain the security and confidentiality of all Confidential Information received from the disclosing Party as the receiving Party uses in the maintenance of the security and confidentiality of its own Confidential Information, and in any event no less than reasonable care. Neither Party shall

Confidential and Proprietary
US Version 001-10 February 2005

Intelsat USA Sales Corp.

Contract Number: 04165-000
Customer Number: 26928

without the written consent of the other, disclose Confidential Information to any third party, unless required by law or competent authority to do so. Prior to such disclosure, the receiving Party shall provide the disclosing Party with sufficient notice to permit the disclosing Party to appeal or contest such requirement. Upon termination or expiration of this Agreement, each Party shall destroy all Confidential Information belonging to the other Party and confirm in writing to the other Party it has done so.

10.2 Intelsat may state that the Customer is a customer and may publish this and the Customer's contact details as it sees fit.

10.3 The obligations contained in this Section shall survive the termination or expiration of this Agreement for a period of 5 years.

## 11. TECHNICAL

11.1 The Customer shall ensure that all Earth Stations comply with the Intelsat Technical Guidelines and Operating Procedures and immediately remedy any non-compliance.

11.2 Intelsat may at any time alter the method by which it provides a Service, replace the Satellite on which Service is provided and/or manage Satellite Capacity during the term of a Service Contract, always provided this does not result in an appreciable degradation in any Service below the provisions of the Intelsat Technical Guidelines and Operating Procedures. The Customer agrees to operate on either sense of polarisation and across an entire frequency band or bands. Intelsat will provide reasonable written notice to the Customer concerning any Service to be replaced, relocated or reconfigured with information on the alternative assignment. Intelsat will provide the equivalent performance on any replacement Satellite in terms of power and bandwidth to continue the Service. Customers are encouraged to change modulation schemes to improve their efficient use of Satellite capacity.

11.3 In cases of Satellite failure or malfunction, Intelsat shall restore affected Services as far as reasonably possible in accordance with the Restoration Policy at https://www.intelsat.com/servide_contracts

## 12. NOTICES

12.1 All notices under this Agreement shall be made in writing, by e-mail, fax or courier, and shall be deemed to be received upon delivery to the other Party at the above address marked as follows:

Intelsat: Telephone: (202) 944-7299, Fax: (202) 944-8120, e-mail uscontractnotices@intelsat.com, Attention: Director, Contracts

SatCom Systems, Inc. Telephone (818) 528-1700, Fax (818) 528-1715, e-mail: tsoumas@satcomsystemsinc.com, Attention: Tom Soumas, CEO

## 13. JURISDICTION

This Agreement shall be governed and interpreted in all respects by the laws of the State of New York and both Parties irrevocably agree that the United States District Court for the District of Columbia shall have jurisdiction to settle any dispute arising out of or in connection with this Agreement, save that Intelsat shall also have the right to take proceedings against the Customer in the national courts of the jurisdiction of the Customer's incorporation. Nothing contained in this Section shall limit any rights either Party may have to seek immediate injunctive relief against the other Party.

## 14. ASSIGNMENT

14.1 The Customer may not assign, transfer or sublease any rights or obligations under this Agreement to any other party without the express written consent of Intelsat.

## 15. MISCELLANEOUS

15.1 (i) This Agreement may only be amended by written agreement of the Parties. (ii) If any provision of this Agreement is found to be invalid or unenforceable, it shall not affect the validity and enforceability of any other provision of this Agreement, and the invalid or unenforceable provision shall, if possible, be replaced with a provision consistent with the intentions of the Parties. (iii) Any Sections which are intended to survive the termination of this Agreement shall survive. (iv) No waiver by either Party of any default by the other Party shall affect or impair either Party's rights in respect of any subsequent default of any kind by the other Party. Acceptance by Intelsat of any payments by the Customer shall not be deemed a waiver of any preceding breach by the Customer of any of the terms or conditions of this Agreement. No waiver shall be effective unless made in writing by a Party's authorised representative. (v) The rights, powers and remedies provided in this Agreement are cumulative and may be exercised singularly or cumulatively. (vi) This Agreement is intended for the sole benefit of the Parties and no third party (including, without limitation, customers of the Customer) may seek to enforce or benefit from this Agreement. (vii) The relationship created by this Agreement is that of independent contractors, and is in no way a partnership, principal-agent or other such relationship and the Customer warrants it will not hold itself out as entitled to bind Intelsat in any way whatsoever.

15.2 This Agreement consists of these Terms and Conditions, Addenda 1 and 2, the relevant Service Descriptions, and any Service Contracts. The headings in this Agreement are for convenience only and shall not affect the interpretation of this Agreement. The language of this Agreement and all other communications between the Parties regarding the performance of this Agreement shall be English. Any period of time referred to in this Agreement shall be calculated in Greenwich Mean Time. The following terms shall have the following meanings:

**Earth Station** means any antennas, switching facilities and related equipment owned or operated by the Customer that form an interconnection point with a Service.

**Including** means including without limitation, whether capitalised or not.

**Satellite** means an object located or intended to be located beyond the earth's atmosphere, that is or will be used for radio communications owned or operated by Intelsat or an affiliate.

15.3 This Agreement constitutes the entire agreement of the Parties and supersedes all prior correspondence, representations, proposals, negotiations, understandings and agreements of the Parties oral or written, with respect to the subject matter.

Confidential and Proprietary
US Version 001-10 February 2005

Intelsat USA Sales Corp.

Contract Number: 04165-000
Customer Number: 25928

IN WITNESS WHEREOF, each of the Parties has duly executed and delivered this Agreement effective on the day and year first above written.

| INTELSAT USA SALES CORP. | SATCOM SYSTEMS, INC. |
|---|---|
| Signed by: _[signature]_ | Signed by: _[signature]_ |
| Print name: _illegible_ | Print name: _illegible_ |
| Title: _illegible_ | Title: _illegible_ |
| Date: 25 APR 2005 | Date: _illegible_ |